[No. 342-2.   Division Two.   October 15, 1971.]

PATRICIA SCOTT MARTIN, *Appellant*, v. MARION E. WALTERS *et al.*, *Respondents*.

*Don W. Taylor* and *E. Robert Fristoe* (of *Brodie, Fristoe & Taylor*), for appellant.

*Ralph G. Swanson* (of *Pebbles, Swanson & Lindskog*), for respondents.

PEARSON, J.—Appellant, Patricia Martin, brought this action to quiet title in herself to a long, 115-foot-wide tract of land situated in Thurston County, claiming that she had obtained title by 10 years or more of adverse possession. The tract was located between appellant's property and that of the respondents, Marion and Marguerite Walters, and included considerable frontage on St. Clair Lake. The trial court dismissed the appellant's claim and quieted title in the respondents.

In the 1940's a Mr. A. O. Pherson, plaintiff's predecessor

in interest, was under the mistaken assumption that he owned the 115-foot tract in issue (tract A) in addition to his actual property (tract B). As the result of a survey, it was discovered that tract A was actually owned by a Mr. Bean, defendants' predecessor in interest, who was the adjoining neighbor on the other side of the disputed strip. As Pherson had maintained both tracts and utilized tract A as the major portion of his front yard, Bean entered into an agreement to lease tract A to Pherson for the consideration of 1 dollar per year.[1] There was a covenant not to assign the lease, but the agreement contained no automatic forfeiture provision. The lease was to expire either upon surrender or upon the death of Pherson.

In 1955 plaintiff and her former husband purchased Pherson's property. Since that time, plaintiff has been divorced and obtained sole title in the settlement. At the time of the purchase, Pherson pointed out both tracts A and B as being included in the sale. It appeared reasonable to plaintiff that Pherson owned both tracts, as the two were landscaped together and were in every way treated as one parcel. Also, Bean's property adjoining tract A was undeveloped and overgrown with brush. Tract A was not included in Pherson's property description at the time of sale, however, and it was stipulated at trial that Bean had possessed the record title. On January 2, 1964, Bean sold all his property to the defendants. The contract did mention the existence of a lifetime lease on a small tract. Pherson visited plaintiff on several occasions in her house, but at no other time set foot on the property. He died on July 5, 1964. Plaintiff always maintained both tracts as one, filling in low spots, improving the irrigation system, and restoring a creek bank.

Sometime in 1965, plaintiff became aware that the property description in her deed did not include tract A. She brought this action in June, 1968, after obtaining a temporary injunction when defendants began to level the tract with a bulldozer.

[1] As Bean collected only the first year's 1 dollar, an inference arose that what was termed a "lease" was intended as a gratuitous life estate.

It was discovered at trial that the "lease" between Bean and Pherson actually described an area 600 feet west of where tract A was located. Bean did testify, however, that tract A was the intended conveyance and the description was due to mutual mistake.

The issue presented to this court on appeal is not whether adverse possession of tract A existed, but rather when did the adverse possession commence? Plaintiff claims adverse possession commenced when she and her husband purchased tract B from Pherson in 1955, and began to utilize both tracts as one parcel. Defendant states that the adverse possession could not commence until Pherson's death in 1964, when the life estate was terminated, and consequently the 10-year period had not run.

Plaintiff concedes that her rights on appeal will be determined by the legal effect given to the instrument denominated "lease" granted by Bean to Pherson in 1944. If that instrument created a life estate in Pherson to the disputed strip which had not expired earlier than on the death of Pherson, it is clear and plaintiff concedes that plaintiff could not acquire title by adverse possession as against the remainderman.

■ As a general rule, possession of a life tenant or one holding under or through the life tenant, cannot be adverse to the remainderman or reversioner. *See McDowell v. Beckham,* 72 Wash. 224, 130 P. 350 (1913); *Mielke v. Miller,* 100 Wash. 119, 170 P. 143 (1918); Restatement (Second) of Property § 222, comment *f* (1971); 58 A.L.R.2d 302 (1958).

However, plaintiff contends that the trial court (1) incorrectly construed the interest created by the instrument as a life estate; (2) incorrectly allowed reformation of the description so as to conform it to the disputed strip; and (3) incorrectly failed to find that the lease was surrendered when Pherson sold his property to plaintiff.

■ We disagree with plaintiff on these three contentions. We dispose first of the contention that reformation of the instrument was not proper, since the original parties to the instrument were not before the court. The successors in

interest to the two parties were before the court and if the original instrument contained, as the court found that it did, a mutually mistaken description of the property leased, reformation was a proper remedy. *See Miles v. Craig*, 147 Wash. 530, 266 P. 182 (1928); *Johnson v. Ramstad*, 68 Wn.2d 971, 413 P.2d 348 (1966).

In determining the nature of the estate created by the instrument, the intention of the grantor may be determined from the language of the instrument, the circumstances surrounding its execution, and the subsequent conduct of the parties with relation to the property. *See Scott v. Wallitner*, 49 Wn.2d 161, 299 P.2d 204 (1956). The trial court, in considering those factors, and in particular the testimony of Bean, the grantor, had substantial evidence on which to base its finding and conclusion that the instrument was intended to create a life estate in Pherson. (*See* footnote 1.)

Plaintiff cites no authority to the effect that Pherson's actions in selling his property to plaintiff and moving away and ceasing use of the disputed property constituted a surrender of his life estate. It appears just as plausible to conclude that Pherson intended plaintiff to enjoy the life estate as it does that he intended to surrender the interest. In any event, that question was one of fact for the trial court and not one of law for this court.

Judgment affirmed.

PETRIE, C.J., and ARMSTRONG, J., concur.